Jeff Oppenheim<br>
1641 3rd Ave, 24K<br>
New York, NY 10128

RECEIVED IN THE CHAMBERS OF

AP? 2 0 ???

April 14, 2011

HON. CLAIRE C. CECCHI

Aaron Abdelhak
493 Teaneck Road
Teaneck, New Jersey 07666

Dear Mr. Abdelhak:

I am in receipt of your email dated March 4, 2011, which included the attachment of a letter dated January 31, 2011 from Mr. Cohen, regarding the court recommended review of assets.

I do not wish to exacerbate this process by contributing to the continued "he-said, she-said" tactics of you and your attorney as it has always been my goal to resolve this situation without a lawsuit dating as far back as 2008. I am therefore writing this letter to you in order that we might set a time and a place to review the tapes from "Aaron Loves Kendra". However, your proposed review of assets seems to be more of an exercise in discovery than it is a true review of the condition of video tapes and I fear you have purposefully created a review process that is designed to fail. However, that said, if this is how you would prefer to proceed then I am willing to follow suit under the following points of clarification.

Specially, you have proposed a planned six hours of review at "20x" fast forward. I must point out that there is no "20x" toggle on any machine on which we would be reviewing the asset as we are reviewing original asset tape and not DVD. We can of course view tape assets in fast forward however, just so you are clear, it is standard industry practice to protect the original asset by playing it as limitedly as possible (usually only once when digitizing the asset). What is most discouraged is playing tapes at fast speeds forward and backward and in fits and starts. This runs the risk of damaging the tape, especially if it is older tape as much of this tape is at this point.

You also stipulate that the tapes must be reviewed in the order in which they were shot. That would be a near impossible task on short order. I cannot guarantee this specificity especially due to the nature of the shoot and the time that has elapsed since the various shoots. As you know, you chose to shoot this project in fits and starts over the course of a four-year period with two cameras (one standard def DV camera and another professional HD DVC cam). As you well know, one camera was operating cinema verite/documentary style to create the mockumentary genre effect you desired. For these reasons it would be impossible to even attempt to organize the viewing as per your request, but I suspect you know that.

As to the purpose of the review, it was my understanding that it was with the expressed intention of determining that I was in possession of the video assets and to what quality the video assets were in. That is what was represented to me during the call with judge Cecchi. And, it is what is represented in the letters of Mr. Cohen at his earliest insertion of himself in this matter. I was never under the impression that this review was designed to become a memory game. Were this

1

still an active project and were we still in the editing room with all editors and Continuity person on deck, perhaps it would facilitate this process. However, as this project has been shuttered since the end of 2007, it would require a more lengthy and arduous process.

If in short form you felt your memory could serve this purpose, I am fine with that and I certainly would do my best as well to recall names. However I would not feel comfortable entering into such an arrangement under the false pretense that after six years, I will without fail be able to remember and/or check their names on the spot.

As to the facility you identify for the review process, we need to inform the post house where we will be conducting the review of the potential for damaging said asset(s) so that they are fully aware of the responsibility and can take any precautions they need to before agreeing to work with us.

The facility must be located at a mutually convenient location in New York City and, as you are selecting and covering the cost of the post-production facility, you must represent that you have vetted the professionalism of the facility, their equipment, and any tech that they assign to us. I also suggest that you advise them we may require additional time and/or days.

Furthermore, you must stipulate that neither the facility nor the tech, nor any other person associated with the facility and the review process are party to or potential witness(es) in this complaint, nor have any relationship with any party or potential witness(es) in this complaint.

Lastly, at this session you agree that you and I will be the only ones in attendance other than a non-party technician. Mr, Cohen <u>should not</u> be in attendance as he has no understanding of this process and as this process does not call for a legal opinion. His presence will only threaten to burden the process emotionally for me, potentially factually for the courts, and financially for you.

If these terms are agreeable to you, please confirm this in writing to me and provide me with a couple of possible dates that are convenient to you.

I await your reply.

Sincerely,

Jeff Oppenheim

Cc;   Hon. Judge Cecchi,
      Dennis Cipriano

2

Oppenheim
1641 3rd Ave 24E
NY NY 10128

RECEIVED-CLERK
U.S. DISTRICT COURT
2011 APR 20 P 2: 46

Hon. Claire Cecchi
Martin Luther King Jr Courthouse
50 Walnut St Rm 5D
Newark, NJ 07101

RECEIVED IN THE CHAMBERS OF
APR 20 2011
HON. CLAIRE C. CECCHI